# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2015AP2429-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| |    Plaintiff-Respondent, |
| |  v. |
| | Shannon Olance Hendricks, |
| |    Defendant-Appellant-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 373 Wis. 2d 309, 895 N.W.2d 104
(2017 – Unpublished)

| | |
|---|---|
| OPINION FILED: | February 20, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 2, 2017 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|  COURT: | Circuit |
|  COUNTY: | Milwaukee |
|  JUDGE: | David L. Borowski and M. Joseph Donald |

| | |
|---|---|
| JUSTICES: | |
|  CONCURRED: | |
|  DISSENTED: | ABRAHAMSON, J. dissents, joined by A.W. BRADLEY, J. (opinion filed). |
|  NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs filed by and an oral argument by *Hannah Schieber Jurss*, assistant state public defender.

For the plaintiff-respondent, there was a brief filed by and an oral argument by *Warren D. Weinstein*, assistant attorney general, with whom on the brief was *Brad D. Schimel*, attorney general.

No. 2015AP2429-CR
(L.C. No. 2011CF4101)

STATE OF WISCONSIN           :         IN SUPREME COURT

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

**State of Wisconsin,**

      **Plaintiff-Respondent,**

      **v.**

**Shannon Olance Hendricks,**

      **Defendant-Appellant-Petitioner.**

**FILED**

**FEB 20, 2018**

Sheila T. Reiff
Clerk of Supreme Court

---

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 REBECCA GRASSL BRADLEY, J.   Shannon Olance Hendricks seeks to withdraw the guilty plea he entered to one count of child enticement. He claims the circuit court's failure to tell him the legal definition of "sexual contact" at his plea hearing violated Wis. Stat. § 971.08's requirement that a pleading defendant must understand the nature of the charge.[1] Because sexual contact is not an element of the crime of child enticement, and because the record shows Hendricks understood

---

[1] All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

the nature of the charge to which he pled guilty, the plea colloquy comported with both § 971.08 and State v. Bangert, 131 Wis. 2d 246, 389 N.W.2d 12 (1986), and Hendricks is not entitled to an evidentiary hearing. Accordingly, we affirm the court of appeals decision[2] upholding the circuit court's order[3] denying Hendricks' motion for plea withdrawal. Moreover, we decline the State's request to modify the Bangert requirements.

## I. BACKGROUND

¶2 The criminal complaint charged Hendricks with one count of second-degree sexual assault of a child under the age of 16. The charges stemmed from Hendricks taking his girlfriend's 14-year-old niece to a park where he touched the victim's chest over her clothes, tried to touch her breasts under her clothes, rubbed her thighs, and touched her buttocks over her clothes while pressuring her to let him have sexual intercourse with her.[4] In January 2012, on the second day of his

---

[2] See State v. Hendricks, No. 2015AP2429-CR, unpublished slip op. (Wis. Ct. App. Dec. 15, 2016).

[3] The Honorable M. Joseph Donald, Milwaukee County Circuit Court decided this postconviction motion; the Honorable David L. Borowski, Milwaukee County Circuit Court presided over the plea colloquy, subsequent hearings, sentencing, and the postconviction motions through the entry of the amended judgment of conviction.

[4] The victim testified at the preliminary hearing (which Hendricks agreed to use as the factual basis for his plea) that as Hendricks touched these different parts of her body, he kept saying "please" and that "he hasn't had it [meaning sexual intercourse] in a while."

trial for second-degree sexual assault, Hendricks decided to take the State's plea offer: Hendricks would plead guilty to the reduced charge of child enticement and the State would recommend a sentence concurrent to the prison sentence Hendricks was currently serving. With help from his lawyer, Hendricks filled out a guilty plea questionnaire and waiver of rights form. After he completed the form, the circuit court conducted a plea colloquy.

¶3 The circuit court began the colloquy by going over the plea questionnaire and waiver of rights form and personally confirming with Hendricks that: (1) he was admitting he committed child enticement, a felony; (2) he was 31 years old, completed high school, understands English, and understands the charge; (3) he was taking medication for anxiety and depression, but had not used any other drugs or alcohol in the last 24 hours; and (4) he understood the constitutional rights he was giving up by pleading guilty including the right to trial, the right to remain silent, the right to testify, the right to a jury trial, and the right to force the State to prove its case beyond a reasonable doubt.

¶4 Next, the circuit court asked Hendricks' lawyer if he had discussed the elements of the offense with his client and noted defense counsel had attached an element sheet to the plea questionnaire. Hendricks' lawyer answered: "Correct, Your Honor. We did go over the elements." Defense counsel told the court he was satisfied that Hendricks understood the elements. The circuit court then asked Hendricks again if he understood he

3

was "pleading guilty and admitting to, as I said, child enticement, which is a felony," and Hendricks answered affirmatively. Next, the circuit court asked Hendricks if he was admitting that he:

> . . . did entice a child, a person under the age of 18, to go into a vehicle, building or room or secluded place, in this case, given the facts in the complaint and given what's indicated on the element sheet, you're admitting that you did cause the victim in this case to go into a secluded area; you intended to have her go to that secluded area, and you understand and knew that the victim was under the age of 18; is that correct?

Hendricks answered, "Yes, Your Honor." After going through all the information related to sentencing, the required deportation warning, the effect pleading guilty would have on Hendricks' right to vote and possession of a firearm, and confirming he was pleading guilty of his "own free will" because he was in fact guilty, the circuit court recognized it had not mentioned any of the prohibited intents listed in the child enticement statute and the elements sheet attached to the plea questionnaire did not specify a prohibited intent.

¶5 After a sidebar, the circuit court continued with the plea colloquy:

> [T]he plea under 948.07 needs to be entered to child enticement but under a specific subsection.
>
> There are six subsections. Subsection (1) is the person, the defendant, enticing a child under 18 to go to a vehicle, room, building or secluded place for one of – and there are alternate purposes. Subsection (1) is having sexual contact or intercourse with a child; subsection (2) is for the purpose of prostitution; subsection (3) is exposing a sex organ; subsection (4)

4

is making a recording of a child engaged in explicit conduct; subsection (5) is causing bodily or mental harm to the child; subsection (6) is giving or selling the child a controlled substance.

Obviously, in this case, according to the complaint and the information, and what I just discussed with the attorneys, what applies, correct me if I'm wrong is Subsection (1), the enticement was for the purpose of, at a minimum, sexual contact, correct counsel?

Hendricks' lawyer answered, "Correct, Your Honor."

¶6 The circuit court then directly addressed Hendricks, asking him if he understood "that's what you're admitting to; you're admitting to child enticement? You were bringing this child under 18 to, in this case, a secluded area for the purpose of potentially having sexual contact with that child, and that's indicated in the complaint, indicated in this case; is that correct, sir?" Hendricks replied, "Yes, it is, Your Honor." The circuit court asked again if Hendricks was pleading guilty because he was guilty and he replied "Yes, I am, Your Honor." The circuit court then went through whether anyone threatened, forced, or told Hendricks to plead guilty and Hendricks assured the court no one had. Hendricks confirmed that his attorney had gone over the guilty plea form with him, that Hendricks read the form, "went over the case" with his lawyer, signed the form, and "had enough time to review this matter" and discuss it with his attorney.

¶7 The circuit court then addressed questions to Hendricks' lawyer:

THE COURT: Counsel, you went over the agreement with your client?

5

[DEFENSE COUNSEL]: We did, Your Honor.

THE COURT: You're satisfied his plea today is free, voluntary and intelligent?

[DEFENSE COUNSEL]: I am, Your Honor.

THE COURT: You saw your client sign and date the questionnaire today?

[DEFENSE COUNSEL]: Yes, Your Honor.

THE COURT: I've read the complaint. The parties are stipulating to the facts in the complaint as a factual basis to support the amended charge and the plea; is that correct?

[PROSECUTOR]: Yes.

[DEFENSE COUNSEL]: Your Honor, we are agreeing to the complaint. As far as what the contact was, we're agreeing to what the victim testified to at the preliminary hearing, which, you know, which would also support the plea.

THE COURT: Well, it was certainly enough on this case.

¶8 The circuit court then directly asked Hendricks if he was "admitting to that," and he said "Yes, Your Honor." The circuit court continued with Hendricks: "You're admitting to the contact, again, with a child who was under 18, the victim, with a date of birth of 9/19/1996, and you're admitting that it was sexual contact, correct, sir?" Hendricks replied, "Yes, Your Honor."

¶9 Based on the stipulation, the complaint, and "what's been indicated in court by counsel and the defendant," the circuit court found: (1) there was a factual basis "for the charge of and plea to child enticement, which is a felony, under 948.07(1)"; and (2) "the defendant has freely, voluntarily and

6

intelligently entered his plea; freely, voluntarily and intelligently waived his rights in this matter." The circuit court accepted the plea, ordered a pre-sentence investigation report, and set a date for sentencing.

¶10 Before sentencing occurred, Hendricks filed a motion seeking to withdraw his plea claiming he pled guilty because he felt rushed and overwhelmed that the victim was going to testify against him; he now claimed he was not guilty. This also led to the withdrawal of his first attorney and the appointment of a second State Public Defender. Hendricks testified at the plea withdrawal hearing that the medication he was on made him "go along" with his first attorney's suggestion that he take the plea because his lawyer said if he did not plead guilty, he would lose at trial and be sentenced to the maximum of 40 years. He admitted that he read the criminal complaint and an "outline of what the jurors would have to go by" to convict him. He also testified he understood the charges against him:

Q Now, in terms of understanding the charges against you and the content of it, your defense attorney showed you the complaint, correct?

A The original complaint?

Q Correct.

A Yes. I saw it before.

Q And you guys went over the elements; what you're pleading to prior to the entry of your plea, correct?

A Yes.

7

Q   And you also knew exactly what you were being accused of because you've been through the revocation hearing on October 26th of 2011, correct?

A   Yes.

When the circuit court questioned why Hendricks admitted his guilt during the plea colloquy and why he said his guilty plea was of "his own free will," Hendricks explained he really did not want to plead guilty but his lawyer said he would lose at trial.  He said he just answered yes to all of the circuit court's questions because he thought his lawyer would not fight for him if the case was tried.

¶11 Hendricks' first lawyer testified at the plea withdrawal hearing that:  (1) he "very thoroughly" discussed with Hendricks the plea offer's amendment of the sexual assault charge to child enticement; (2) he "was totally convinced that [pleading guilty to the reduced charge] was a voluntary decision that [Hendricks] was making"; (3) there was no indication that Hendricks felt rushed; and (4) after going over the plea offer, and the strengths and weaknesses, the decision of whether to plead or go to trial was left to Hendricks.

¶12 At the end of the plea withdrawal hearing, the circuit court indicated that Hendricks' request for plea withdrawal was based on his hope that the victim would not show up to testify against him at a trial.  The circuit court believed the request was based solely on Hendricks' "change of heart."  It reviewed the plea colloquy finding it to be extremely thorough. Hendricks' lawyer agreed it was "a great colloquy" and suggested

8

its only flaw was the failure to ask Hendricks if his medications affected his ability to understand.

¶13 In January 2013, the circuit court denied the plea withdrawal motion. It found: (1) the plea questionnaire and plea colloquy were "very thorough"; (2) Hendricks answered questions indicating he "was making this decision freely and voluntarily"; (3) Hendricks did not indicate "any hesitancy, whatsoever" at any time during the plea colloquy; (4) the circuit court discussed and explained the elements of the offense a couple times; (5) defense counsel "was satisfied that the defendant's plea was free, voluntary and intelligent"; (6) Hendricks had "plenty of time, more than adequate amount of time to go over the plea questionnaire, discuss it with his attorney"; (7) Hendricks' claim that his medication made him just "go along" was not credible because he was currently on the same medication but "fighting and fighting and fighting" to withdraw his plea; (8) he is a high school graduate with vocational training and some college; he does not have any learning disabilities; and (9) Hendricks failed to present a fair and just reason for plea withdrawal——his reason was nothing more "than a complete and total change of heart."

¶14 In February 2013, over a year after Hendricks entered his plea, he was sentenced in accordance with the agreed upon recommendation. The circuit court sentenced him to three years of initial confinement concurrent to the sentence he was then serving, plus four years of extended supervision.

¶15 After some postconviction motions not pertinent here, an amended judgment of conviction was entered in September 2014.[5] Initially, Hendricks' appellate counsel filed a no-merit appeal, but then requested dismissal of the no-merit appeal and an extension of time to file a new postconviction motion. The court of appeals granted those motions. Hendricks then filed a motion in the circuit court alleging a deficiency in his plea colloquy——namely, the circuit court failed to explain the meaning of "sexual contact" or to verify Hendricks understood the meaning of that term. Hendricks argued Wis. Stat. § 971.08 requires the circuit court to ensure a defendant understands the nature of the charge, which means a defendant must have an awareness of the essential elements of the crime. Hendricks contends the intent to have sexual contact is an essential element of sexual enticement and therefore the circuit court's failure to give him the legal definition of "sexual contact" rendered his plea deficient. He wanted the circuit court to hold an evidentiary hearing on the motion. The State conceded at the circuit court level that an evidentiary hearing should be held.

¶16 The circuit court summarily denied the motion, reasoning:

---

[5] These motions dealt with sentence modification issues, ultimately resulting in a reduction of the initial confinement portion of his sentence so that it matched the time left on the sentence he was already serving.

10

The cases the defendant and the State rely on all involve sexual assault of a child. There is not a single case which holds that the meaning of sexual contact is an essential element of child enticement.

. . . .

[T]he defendant in this case was not convicted of sexual assault of a child – he was convicted of child enticement. These crimes are not the same. As relevant to this case, the elements of child enticement include causing, or attempting to cause, a child to go into any vehicle, building, room, or secluded place, with the intent to have sexual contact with the child. Actual sexual contact is not a required element. This is because the purpose of section 948.07, Stats., is not to punish the commission of the enumerated act, but succeeding in getting a child to enter a place with intent to commit such a crime. State v. Hanson, 182 Wis. 2d 481 (Ct. App. 1994). On the other hand, the purpose of section 948.02, Stats., is to punish the sexual contact itself. Consequently, when a defendant enters a guilty or no contest plea to a crime of sexual assault of a child, a crime which carries a far greater penalty than child enticement, the court must ascertain that the defendant understands the essential elements of that offense, including the element of sexual contact. But when a defendant enters a guilty or no contest plea to child enticement for the purpose of sexual contact, actual sexual contact is not a required element, and therefore, a court is not required to explain the meaning of sexual contact. See State v. Trochinski, 253 Wis. 2d 38, 61 (2002) (a valid plea requires only knowledge of the essential elements of the offense, not knowledge of nuances and descriptions of the elements).

The circuit court found both the plea colloquy and the plea questionnaire established that Hendricks had the requisite knowledge of the elements of child enticement; he "understood the essential elements of this offense" when he pled guilty. Thus, he failed to establish a defect in the plea colloquy, and

11

no evidentiary hearing was required. The court of appeals affirmed. We granted the petition for review.

## II. STANDARD OF REVIEW

¶17 Whether a defendant is entitled to an evidentiary hearing on his plea withdrawal motion under Bangert is a question of law we review independently. See State v. Howell, 2007 WI 75, ¶30, 301 Wis. 2d 350, 734 N.W.2d 48. We review de novo whether Hendricks (1) "has pointed to deficiencies in the plea colloquy that establish a violation of Wis. Stat. § 971.08 or other mandatory duties at a plea hearing"; and (2) sufficiently alleged that he did not know or understand information that should have been provided at the plea hearing." See State v. Brown, 2006 WI 100, ¶21, 293 Wis. 2d 594, 716 N.W.2d 906.

## III. DISCUSSION

A. There is no deficiency in the plea colloquy.

¶18 Hendricks asserts intent to have "sexual contact" is an essential element of child enticement and, therefore, the circuit court's failure to define the term "sexual contact" during the plea colloquy rendered it deficient under both Wis. Stat. § 971.08 and Bangert.[6] The State responds that because "sexual contact" is not an essential element of child enticement, the circuit court was not required to give Hendricks

---

[6] See State v. Bangert, 131 Wis. 2d 246, 389 N.W.2d 12 (1986).

its legal definition, and therefore the plea colloquy complied with § 971.08 and Bangert. The State is correct.

¶19 Wisconsin Stat. § 971.08(1) requires a court to do four things before it "accepts a plea of guilty or no contest":

(a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted.

(b) Make such inquiry as satisfies it that the defendant in fact committed the crime charged.

(c) Address the defendant personally and advise the defendant as follows: "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law."

(d) Inquire of the district attorney whether he or she has complied with s. 971.095(2).

The issue here focuses solely on paragraph (a) and whether Hendricks understood "the nature of the charge." "An understanding of the nature of the charge must include an awareness of the essential elements of the crime." Bangert, 131 Wis. 2d at 267. To ensure a defendant understands the nature of the charge, a circuit court must employ "any one or a combination of" three methods: (1) "summarize the elements of the crime charged by reading from the appropriate jury instructions . . . or from the applicable statute"; (2) ask defense "counsel whether he explained the nature of the charge to the defendant and request him to summarize the extent of the

13

explanation, including a reiteration of the elements at the plea hearing"; or (3) "expressly refer to the record or other evidence of defendant's knowledge of the nature of the charge established prior to the plea hearing." Id. at 267-68.

¶20 The record demonstrates the circuit court employed a combination of the various methods. The circuit court interacted directly with Hendricks and repeatedly summarized the elements of child enticement. Every time, Hendricks responded that he understood. The circuit court asked defense counsel if he explained the nature of the crime and if he discussed the elements with Hendricks.[7] Defense counsel assured the circuit court he had. Further, during the plea colloquy the circuit court referred to the record demonstrating Hendricks' knowledge of the nature of the charge, including the complaint, the guilty plea waiver form, and the victim's testimony at the preliminary hearing. There is no question the circuit court conducted an extremely thorough and complete plea colloquy.

¶21 The child enticement statute, Wis. Stat. § 948.07 provides:

> Whoever, with intent to commit any of the following acts, causes or attempts to cause any child who has not attained the age of 18 years to go into any vehicle, building, room or secluded place is guilty of a Class D felony:

---

[7] Had this been the only method the circuit court chose, it would have had to make defense counsel reiterate the elements. This, however, was not the court's primary method; instead, it was an additional check to ensure Hendricks' counsel discussed the elements of the charge with him.

(1) Having sexual contact or sexual intercourse with the child in violation of s. 948.02, 948.085, or 948.095.

(2) Causing the child to engage in prostitution.

(3) Exposing genitals, pubic area, or intimate parts to the child or causing the child to expose genitals, pubic area, or intimate parts in violation of s. 948.10.

(4) Recording the child engaging in sexually explicit conduct.

(5) Causing bodily or mental harm to the child.

(6) Giving or selling to the child a controlled substance or controlled substance analog in violation of ch. 961.

There are three elements the State must prove in a child enticement case:

(1) [T]hat the defendant caused or attempted to cause a child to go into a vehicle, building, room or secluded place;

(2) [T]hat the defendant did so with any one of the six enumerated intents, generally relating to sex and drug crimes; and

(3) [T]hat the victim had not attained the age of 18.

State v. Derango, 2000 WI 89, ¶31, 236 Wis. 2d 721, 613 N.W.2d 833 (citing Wis. Stat. § 948.07). This court emphasized in Derango that child enticement is "one offense with multiple modes of commission." 236 Wis. 2d 721, ¶17. The crime is the "act of enticement," "not the underlying intended sexual or other misconduct." Id. Thus, an act of sexual contact is not an element of child enticement. The crime of child enticement prohibits "the act (or attempt) of enticement luring a child to

15

a secluded place, away from the protections of the general public" for some improper purpose. Id., ¶¶18, 21. Textually, the act of enticement itself encompasses a bad intent.

¶22 Relying on three sexual assault by sexual contact cases, State v. Jipson, 2003 WI App 222, 267 Wis. 2d 467, 671 N.W.2d 18, State v. Nichelson, 220 Wis. 2d 214, 582 N.W.2d 460 (Ct. App. 1998), and State v. Bollig, 2000 WI 6, 232 Wis. 2d 561, 605 N.W.2d 199, Hendricks argues that sexual contact is an essential element of child enticement and the term should have been defined for him at the plea hearing. We disagree. As the circuit court correctly noted in its order denying Hendricks' postconviction motion, child enticement is a different crime from child sexual assault. The elements are different, the punishments are different, and "[t]here is not a single case which holds that the meaning of sexual contact is an essential element of child enticement." Because the State must prove sexual contact itself in a child sexual assault case, it makes sense that to understand the nature of the charge, a defendant pleading to sexual assault based on sexual contact must be told the specific statutory definition of sexual contact in Wis. Stat. § 948.01(5).[8] The crime of child enticement,

---

[8] Wisconsin Stat § 948.01(5) defines "sexual contact" as "any of the following":

> (a) Any of the following types of intentional touching, whether direct or through clothing, if that intentional touching is either for the purpose of sexually degrading or sexually humiliating the
> (continued)

16

however, does not require the State to prove a defendant committed (or attempted to commit) an act of sexual contact; rather, the State must prove the act of criminal enticement, which presupposes bad intent. Obviously, a person could not be charged with the crime of child enticement for luring her child into their garage to surprise the child with a brand new bicycle.

¶23 In addition, the courts in Jipson, Nichelson, and Bollig specifically held that sexual contact is an essential

complainant or sexually arousing or gratifying the defendant:

1. Intentional touching by the defendant or, upon the defendant's instruction, by another person, by the use of any body part or object, of the complainant's intimate parts.

2. Intentional touching by the complainant, by the use of any body part or object, of the defendant's intimate parts or, if done upon the defendant's instructions, the intimate parts of another person.

(b) Intentional penile ejaculation of ejaculate or intentional emission of urine or feces by the defendant or, upon the defendant's instruction, by another person upon any part of the body clothed or unclothed of the complainant if that ejaculation or emission is either for the purpose of sexually degrading or sexually humiliating the complainant or for the purpose of sexually arousing or gratifying the defendant.

(c) For the purpose of sexually degrading or humiliating the complainant or sexually arousing or gratifying the defendant, intentionally causing the complainant to ejaculate or emit urine or feces on any part of the defendant's body, whether clothed or unclothed.

17

element of the crimes of second-degree sexual assault of a child, first-degree sexual assault of a child, and attempted sexual contact with a child. None of these cases, however, say sexual contact is an element of the crime of child enticement. This distinction follows naturally from the differences in the language of the statutes involved. The statutes at issue in Jipson, Nichelson, and Bollig list "sexual contact" as a specific element of the crime, whereas the child enticement statute lists "sexual contact" as one of six alternative modes of commission rather than as a specific element.[9]

¶24 Hendricks argues we cannot rely on Derango's conclusion that sexual contact is not an element of child enticement because Derango did not involve plea withdrawal, but instead addressed jury unanimity. Hendricks insists Derango's analysis and holding on the elements of child enticement must be limited to unanimity cases. We disagree. Although Hendricks is correct that this court in Derango analyzed the child enticement statute in the context of jury unanimity, this in no way influences our identification of the elements of child

---

[9] State v. Jipson, 2003 WI App 222, 267 Wis. 2d 467, 671 N.W.2d 18, dealt with Wis. Stat. § 948.02(2), which states "[w]hoever has sexual contact or sexual intercourse with a person who has not attained the age of 16 years." (Emphasis added.) State v. Nichelson, 220 Wis. 2d 214, 582 N.W.2d 460 (Ct. App. 1998), dealt with Wis. Stat. § 948.02(1)(1997-98), which states "[w]hoever has sexual contact or sexual intercourse with a person who has not attained the age of 13 years." (Emphasis added.) State v. Bollig, 2000 WI 6, 232 Wis. 2d 561, 605 N.W.2d 199, also dealt with § 948.02(1).

enticement. Sexual contact is either an element of child enticement or it is not. It cannot be an element for one type of case, but not in another. In Derango, this court examined the plain language of the statute to determine that sexual contact is not an element of the crime of child enticement. See Derango, 236 Wis. 2d 721, ¶¶16-17. We held the statutory language to be "straightforward"——"[t]he act of enticement is the crime, not the underlying intended sexual or other misconduct." Id., ¶17. We supported this interpretation with additional cases interpreting the child enticement statute and with the statute's legislative history. Id., ¶¶19-20. See, e.g., id., ¶19, (citing State v. Hanson, 182 Wis. 2d 481, 487, 513 N.W.2d 700 (Ct. App. 1994)) ("The gravamen of the crime is not the commission of an enumerated act, but succeeding in getting a child to enter a place with intent to commit such a crime." (emphasis added)). Our analysis remains sound and we see no reason to overturn, abandon, or distinguish it.

¶25 Our conclusion is further supported by State v. Steele, 2001 WI App 34, 241 Wis. 2d 269, 625 N.W.2d 595. Steele was a plea withdrawal case, which relied upon a jury unanimity case to ascertain the essential elements of armed burglary. Id., ¶¶1, 8-9. Steele argued his plea colloquy was deficient because the circuit court did not specifically identify which "felony" supported the burglary charge; he claimed the specific felony was an essential element and needed to be discussed. Id., ¶¶1-3, 8. The circuit court identified the elements as: (1) entering a dwelling; (2) intentionally; (3) without consent;

(4) intending to commit a felony; (5) armed with a dangerous weapon. Id., ¶3. In rejecting Steele's claim that the felony had to be explained[10] because it is an essential element, the court of appeals relied on State v. Hammer, 216 Wis. 2d 214, 576 N.W.2d 285 (Ct. App. 1997). Hammer was a jury unanimity case, which analyzed the statutory language of Wis. Stat. § 943.10, the burglary statute, and concluded that what specific felony a defendant intends to commit is not an essential element because § 943.10 "sets forth a 'single offense with multiple modes of commission,' not multiple offenses defined by each possible underlying felony." Steele, 241 Wis. 2d 269, ¶9 (quoting Hammer, 216 Wis. 2d at 220).

¶26 From Derango, Steele, and Hammer, we discern a governing principle. The modes of commission following "intends to commit" language within statutes do not constitute an element of a crime. Of course, a statute's mode of commission must

---

[10] The court of appeals in State v. Steele, 2001 WI App 34, 241 Wis. 2d 269, 625 N.W.2d 595, additionally held that the circuit court's "failure to specify the underlying felony was not a defect in the plea proceedings." Id., ¶10. While the particular mode of commission in a child enticement case need not be legally defined because it is not an element of the offense, it does need to be identified during the plea colloquy to ensure a factual basis exists for the plea. In the context of a burglary, Wis. Stat. § 943.10 does not specify the particular felonies the defendant must have intended to commit; therefore, as the court in Hammer noted, "it does not matter which felony formed the basis of that intent." State v. Hammer, 216 Wis. 2d 214, 220, 576 N.W.2d 285 (Ct. App. 1997). The child enticement statute, in contrast, specifies six separate intended acts, at least one of which must be identified during the plea colloquy.

20

still be disclosed and acknowledged at a plea hearing in order to ensure a factual basis for the plea. For burglary, the circuit court must advise a defendant that one of the elements is the "intent to commit a <u>felony</u>." It would be insufficient for the circuit court to simply say "intent to commit." Likewise, for child enticement, a circuit court cannot simply say to a pleading defendant that he must have enticed a child to a secluded place "with intent." That would be absurd. A circuit court must identify at least one of the prohibited modes of committing child enticement to ensure there exists a factual basis for accepting a plea.[11] And, Wisconsin Stat. § 971.08(1) requires a court, prior to accepting a plea, to "determine that the plea is made voluntarily with understanding of the nature of the charge." Before accepting Hendricks' plea, the circuit court accomplished both of these requirements.

¶27 The circuit court here recognized the mode of commission was initially missing and took the proper steps to correct the omission. As a result, the circuit court actually read all six of the prohibited intents listed in the statute during the plea colloquy and then specifically asked Hendricks

---

[11] The dissent's fabricated Bokononism example is not one of the modes of commission in the child enticement statute. See dissent, ¶51. Our decision in this case is based on the actual law in place and the extensive record recounted in part I of this opinion. The record establishes that Hendricks failed to demonstrate any plea defect. The dissent's insistence that a plea deficiency exists does not make it so——no matter how many times the dissent says it.

if he was admitting to the prohibited intent of sexual contact. Hendricks repeatedly answered affirmatively, expressing no confusion at any point regarding the meaning of sexual contact or otherwise. In fact, as detailed more fully below, Hendricks conceded the victim's testimony at the preliminary hearing accurately recounted his actions, thereby establishing his understanding of the nature of the charge, including his intention to engage in sexual contact with the victim. Hendricks fails to establish any deficiency in his plea colloquy.[12]

B. The record shows Hendricks knew the nature of the charge.

¶28 We further hold Hendricks failed to sufficiently allege he did not know or understand information that should have been provided at the plea hearing. We already rejected his claim that he should have been given the legal definition of sexual contact. We also reject his contention he did not understand the meaning of this term because the record belies Hendricks' claim.

¶29 The entire record is fair game in assessing whether Hendricks understood the circuit court's repeated questions as to whether he committed the crime of child enticement. See Bollig, 232 Wis. 2d 561, ¶53. The record before us is substantial and to some extent unusual because we not only have

---

[12] Hendricks turns to party-to-a-crime cases to support his position. Because Hendricks was not charged as party to a crime, we decline to analyze the unique nature of plea colloquies involving party-to-a-crime charges.

the plea colloquy to consider, we also have Hendricks' own testimony from his pre-sentence plea withdrawal hearing. At that hearing, Hendricks admitted to knowing the charges to which he pled because he was present at a revocation hearing where the charges were read; he admitted his attorney went over the elements of the charge; and he admitted that he saw and read the original complaint. The original complaint, as material, states:

- The defendant "did have sexual contact" with the victim, who "had not attained the age of 16 years."

- "The victim has known the defendant for a long period of time and thinks of him as an uncle."

- "The defendant walked with the victim to . . . the victim's grandmother's house. The defendant learned that his girlfriend, the victim's aunt, was coming to the location so he suggested that he wanted to leave the area and that the victim should go with him. The victim went with the defendant to Pulaski Park."

- "Once they were in the park, the victim was seated on the top of a picnic table and the defendant sat on the seat portion of the table. The defendant positioned himself between the victim's legs."

- "[T]he defendant started to touch her legs. The victim told him to stop. The defendant picked up the victim's legs and held them until they were level with his shoulders. The defendant then stated to the victim, 'Can I kiss there?' The victim understood this to mean her vagina because that is where he seemed to be looking when he said this. The defendant stated, 'Please, I haven't had it in a while.'"

- "The defendant continued to rub the victim's legs and tried to touch her vagina over her shorts. The

23

victim pushed her knees together to stop the defendant and told the defendant, 'No.'"

- "The victim pushed the defendant's hand away from her vagina and repeatedly told [him] to stop. The defendant then reached around the victim and grabbed her buttock over her clothing."

- "The defendant then kissed the victim's upper arms and chest area."

- "The defendant rubbed and squeezed the victim's breasts over her clothing and kept saying, 'Please, please, please,' into her ear. The defendant placed his hand inside the victim's shirt and moved his hand onto her breast but was not able to fully grab her breast before she pushed his hand away. The defendant then attempted to unhook her bra and expose her breasts."

¶30 Also, Hendricks was present when the victim testified at the preliminary hearing, and he conceded the victim's testimony accurately recounted his actions. The victim testified that Hendricks placed his hands on her inner thighs, her chest and her buttocks while begging her to "please" let him have sexual intercourse with her because he had not "had it in a while." This case goes beyond showing Hendricks acted to entice the child victim to a secluded place with the intent to have sexual contact. Hendricks' claim that he did not understand the nature of the charge is belied by the record before us. Even Hendricks' lawyer at the pre-sentence plea withdrawal hearing admitted the circuit court conducted a "great colloquy." Hendricks failed to show any Bangert violation, as the record conclusively establishes Hendricks' graphic understanding of the nature of the crime to which he pled guilty.

C. State's request to modify Bangert

24

¶31 The State requests this court modify Bangert to conform Wisconsin plea practice to what the United States Supreme Court held is constitutionally-mandated. Specifically, the second Bangert method requires the circuit court to first ask defense counsel if he explained the nature of the charge to the defendant and then request counsel to "summarize the extent of the explanation, including a reiteration of the elements, at the plea hearing." 131 Wis. 2d at 268. In asking us to eliminate the latter requirement, the State cites Bradshaw v. Stumpf, 545 U.S. 175 (2005), which held a plea colloquy sufficient where competent defense counsel simply assures the circuit court "the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty." Id. at 183. In other words, defense counsel would not need to "summarize the extent of the explanation" or reiterate the elements on the record, as Bangert requires. It would be enough for defense counsel to simply advise the circuit court that counsel had the requisite conversation with the defendant.

¶32 We reject the State's request to change Bangert. Bangert set forth three reasonable methods of satisfying Wis. Stat. § 971.08's statutory requirement ensuring a pleading defendant understands the nature of the charge, which includes an awareness of the elements of the crime. Each of the three methods adequately protects the rights of a defendant who elects to plead guilty or no contest. Scaling back Bangert's second method in favor of a general assurance from defense counsel would inevitably lead to motions where defendants claim the

25

conversation with defense counsel never occurred. Bangert's current method puts the conversation between defense counsel and the defendant on the record contemporaneously with taking the plea. Bangert's methods have worked well for over 30 years and we are not convinced a modification of Bangert is necessary or prudent. In addition, the State forfeited the right to request a change to Bangert by failing to raise this issue in a cross-petition for review or in its response to Hendricks' petition for review. See State v. Smith, 2016 WI 23, ¶41, 367 Wis. 2d 483, 878 N.W.2d 135.

## IV. CONCLUSION

¶33 We hold sexual contact is not an element of the crime of child enticement. Rather, the six enumerated prohibited intents are modes of commission. At least one mode of commission must be referenced during a plea colloquy, but the terms comprising each mode need not be specifically defined. This is because the crime of child enticement does not require proof of the actual, physical action contemplated by the mode of commission, only that the defendant acted to entice a child while intending to do one of the prohibited acts. The act of enticement is the crime, not the underlying intended sexual or other misconduct. Hendricks failed to establish any deficiency in this plea colloquy, which comported with both Wis. Stat. § 971.08 and Bangert. Wisconsin Stat. § 971.08(1) requires a court, prior to accepting a plea, to "determine that the plea is made voluntarily with understanding of the nature of the charge." The record establishes Hendricks fully understood he

26

enticed the child victim to a secluded place with the intent of having sexual contact. His claimed incomprehension contradicts the record. Finally, we reject the State's invitation to alter Bangert's required procedures. The Bangert framework is designed to ensure a defendant understands the nature of a charge in order to protect a defendant's rights when entering a plea. Accordingly, we affirm the court of appeals decision upholding the circuit court's order denying Hendricks' motion for plea withdrawal.

*By the Court.*—The decision of the court of appeals is affirmed.

¶34 SHIRLEY S. ABRAHAMSON, J. *(dissenting).* The majority's conclusion in the instant case that a circuit court need not verify that a defendant understands the specific mode of commission of the crime to which he is pleading guilty creates serious due process concerns.

¶35 As Hendricks aptly queried in his brief: "How can a defendant knowingly and intelligently plead guilty to causing a child to go into a secluded place with intent to do 'X' if he need not understand what 'X' is?"[1] How indeed?

¶36 The majority fails to articulate a satisfactory answer to this question. Instead, the majority looks to the law governing jury unanimity. It holds that the modes of commission within the child enticement statute are not elements as to which a defendant is entitled to jury unanimity and concludes that as a consequence, the circuit court was not required to verify that Hendricks understood what constituted "sexual contact" under the law before accepting his guilty plea.

¶37 I conclude that it is inconsistent with due process for a circuit court to accept a defendant's guilty plea to a charge that requires proof of an intended underlying act without verifying that the defendant understands what the underlying intended act is. Accordingly, I dissent.

I

¶38 I begin by setting forth two settled legal principles that guide my analysis in the instant case.

---

[1] Brief and Appendix of Defendant-Appellant-Petitioner at 17.

1

¶39 First, proof of an intended underlying act is an element[2] of some crimes, even though there may be several alternative qualifying acts. The individual jurors need not agree as to which particular intended underlying act was proven, so long as they agree that at least one qualifying intended underlying act was proven beyond a reasonable doubt.[3]

¶40 For example, in order to convict a defendant of child enticement, the jury must unanimously agree that the defendant caused a child to go to a secluded place with intent to commit at least one of six statutorily listed acts. If an individual juror does not believe that the State proved intent to commit any of the six qualifying acts, the defendant cannot be convicted. However, if the individual jurors agree that the State proved intent to commit at least one of the six qualifying acts, the defendant can be convicted even though the jurors disagree about which particular intended underlying act was proved. See State v. Derango, 2000 WI 89, ¶¶13-25, 236

---

[2] In State v. Bangert, 131 Wis. 2d 246, 389 N.W.2d 12 (1986), and other cases, the court sometimes uses the undefined phrase "essential element."

[3] See, e.g., State v. Derango, 2000 WI 89, ¶25, 236 Wis. 2d 721, 613 N.W.2d 833 (defendant not entitled to jury unanimity at trial as to the underlying mode of committing child enticement); State v. Hammer 216 Wis. 2d 214, 220, 576 N.W.2d 285 (Ct. App. 1997) (defendant not entitled to jury unanimity as to intended underlying felony in a burglary charge because burglary——entering a building with intent to commit a felony——is a single offense with multiple modes of commission based upon the intended underlying felony).

Wis. 2d 721, 613 N.W.2d 833; see also State v. Hammer, 216 Wis. 2d 214, 218-22, 576 N.W.2d 285 (Ct. App. 1997).

¶41 Second, Wis. Stat. § 971.08 and State v. Bangert, 131 Wis. 2d 246, 389 N.W.2d 12 (1986), address the plea colloquy. The statute requires a circuit court to "[a]ddress the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge" before accepting the defendant's guilty plea. Wis. Stat. § 971.08(1)(a). As interpreted by Bangert, § 971.08 makes it "mandatory upon the trial judge to determine a defendant's understanding of the nature of the charge . . . ." Bangert, 131 Wis. 2d at 267.

¶42 The Bangert court declared that the circuit court must (1) either inform the defendant of the nature of the charge or ascertain that the defendant "possesses accurate information about the nature of the charge[,]" and then (2) "ascertain the defendant's understanding of the nature of the charge . . . ." Bangert, 131 Wis. 2d at 267. "Nature of the charge" is not defined in the statute, but Bangert stated that "[a]n understanding of the nature of the charge must include an awareness of the essential elements of the crime." Bangert, 131 Wis. 2d at 267. Compliance with Wis. Stat. § 971.08(1) helps ensure that a defendant's plea is knowing, intelligent, and voluntary and satisfies due process. State v. Brown, 2006 WI 100, ¶23, 293 Wis. 2d 594, 716 N.W.2d 906; State v. Finley, 2015 WI App 79, ¶17, 365 Wis. 2d 275, 872 N.W.2d 344.

¶43 Thus, in order to accept a guilty plea, the circuit court must verify that the defendant is aware of the elements of

3

the crime. With regard to crimes with alternative modes of commission, the defendant is advised at the plea hearing of the mode of commission to which he is pleading guilty even though, if the defendant does not plead guilty and the case goes to trial, a jury need not be unanimous on the mode of commission in order to return a guilty verdict.

## II

¶44 The majority opinion is flawed. The majority essentially adopts the reasoning of the court of appeals decision in State v. Steele, 2001 WI App 34, 241 Wis. 2d 269, 625 N.W.2d 595. Majority op., ¶25-26. In Steele, the court of appeals relied on jury unanimity law in determining the elements of burglary in order to decide whether the circuit court properly discharged its obligations under Wis. Stat. § 971.08 and Bangert. The court of appeals held in Steele that because the particular underlying felony to which the defendant pleaded was not an element that required jury unanimity, the circuit court did not err in failing to specify the particular underlying felony during the plea colloquy. Steele, 241 Wis. 2d 269, ¶¶7-10.

¶45 The majority adopts the reasoning enunciated in Steele, although the court of appeals has raised doubts about the validity of its own Steele decision and has suggested that this court should overturn Steele. I agree with the court of appeals that Steele is not good law and should be overturned. The court of appeals challenged the reasoning in Steele for improperly relying on jury unanimity law for purposes of

4

evaluating the adequacy of a plea colloquy. State v. Hendricks, No. 2015AP2429-CR, unpublished slip op., ¶¶28-30 (Wis. Ct. App. Dec. 15, 2016).

¶46 Nevertheless, the majority adopts the reasoning of Steele, as follows:

> We hold sexual contact is not an element of the crime of child enticement. Rather, the six enumerated prohibited intents are modes of commission. At least one mode of commission must be referenced during a plea colloquy, but the terms comprising each mode need not be specifically defined. This is because the crime of child enticement does not require proof of the actual, physical action contemplated by the mode of commission, only that the defendant acted to entice a child while intending to do one of the prohibited acts. The act of enticement is the crime, not the underlying intended sexual or other misconduct.

Majority op., ¶33 (emphasis in majority).[4]

¶47 The general rule derived from the majority opinion is that a circuit court is not required to verify in the plea colloquy that a defendant understands the meaning of any particular qualifying intended underlying acts of the charged

---

[4] The majority borrows language directly from the court's decision in Derango. Derango, 236 Wis. 2d 721, ¶17 ("The act of enticement is the crime, not the underlying intended sexual or other misconduct."). I conclude this statement in Derango needs clarification.

The crime of child enticement is actually a combination of enticing a child and having the intent to commit statutorily proscribed conduct. Causing a child to go into a secluded place without the requisite intent is not a violation of Wis. Stat. § 948.07. A defendant must cause a child to go into a secluded place with intent to commit statutorily proscribed conduct in order to be convicted of child enticement. Wis. Stat. § 948.07. Thus, the act of enticement with the necessary intent is the crime.

5

crime because no one particular qualifying intended underlying act constitutes an element of the crime charged.

¶48 The majority's conclusion has at least two significant flaws. First, the majority's conclusion leads to an irrational result. Suppose, for example, that child enticement had only one mode of commission——namely, a person is guilty of child enticement if he or she causes a child to enter a secluded place with intent to have sexual contact. According to the majority, the circuit court would be required to verify the defendant's understanding of child enticement and sexual contact. However, once five additional alternative modes of commission are introduced into the statute, according to the majority, the circuit court is no longer required to verify that Hendricks understands any of the possible modes of commission because he is not entitled to jury unanimity as to any particular mode of commission of the crime. What is the logic in this reasoning?

¶49 Second, the majority's conclusion fails to explain adequately how a defendant can knowingly and intelligently plead guilty to a charge that requires proof of intent to do "X" if the defendant does not understand what "X" is.

¶50 Of course, the "X" in the instant case happens to be "sexual contact," a term with which adults are generally familiar even though the term has a distinct statutory definition. See Wis. Stat. § 948.01(5). I posit that the due process problem left unaddressed by the majority is more obvious if the reader replaces "sexual contact" with a term with which the reader is unfamiliar.

6

¶51 Suppose that there was a seventh mode of committing child enticement: causing a child to go into a secluded place with the intent to convert the child to Bokononism. Unless the defendant happens to be a reader of Vonnegut, he or she is not likely to know what Bokononism is.[5] Can a defendant really be said to knowingly and intelligently plead guilty to causing a child to go into a secluded place with intent to convert the child to Bokononism if he or she does not know what Bokononism is? The majority apparently sees no problem with the circuit court's accepting a guilty plea from a defendant under these circumstances. I do. My hypothesizing an entirely unfamiliar mode of committing an offense highlights the absurdity of the majority's reasoning.

III

¶52 Unlike the majority, I conclude that in order to satisfy due process, a circuit court may not accept a guilty plea from a defendant charged with a crime that requires proof of an intended underlying act unless the court verifies that the defendant understands what the intended underlying act is.

¶53 The circuit court need not explain every mode of commission of the crime before accepting a defendant's guilty

---

[5] Bokononism is an artificial religion practiced by the inhabitants of the fictional Caribbean island of San Lorenzo in Kurt Vonnegut's novel Cat's Cradle.

7

plea.[6] Rather, the circuit court is required to verify the defendant's understanding of the mode(s) of commission to which the defendant is pleading guilty and for which an adequate factual basis exists. Such a rule is workable in practice and ensures that a defendant's plea is knowing, intelligent, and voluntary and therefore in compliance with the requirements of due process. Brown, 293 Wis. 2d 594, ¶23; Finley, 365 Wis. 2d 275, ¶17.

IV

¶54 In addition to holding that Hendricks failed to establish any deficiency in his plea colloquy, the majority also concludes that Hendricks is not entitled to a hearing because "the record conclusively establishes Hendricks' graphic understanding" of the meaning of sexual contact. Majority op., ¶30. Essentially, the majority reasons that Hendricks is not entitled to a hearing to determine if he understood the meaning of "sexual contact" because it is obvious that he understood the

---

[6] An argument could be made that the circuit court actually does need to verify that the defendant understands every possible mode of commission. After all, were the defendant to stand trial, the State could convict him by convincing the jury that the defendant intended at least one of the six statutorily proscribed acts, and the jury need not agree which one of those intended underlying acts was proved. Thus, the argument goes, the defendant should understand all qualifying intended underlying acts that could be relied upon by individual jurors to return a guilty verdict.

While this approach might prove workable with regard to a plea of guilty to child enticement, which has six possible modes of commission, it will be unworkable with regard to a plea of guilty to burglary, which has many more modes of commission.

meaning of "sexual contact." Such reasoning is incompatible with due process.

¶55 In Bangert, the court established that when a defendant shows "a prima facie violation of Section 971.08(1)(a) or other mandatory duties, and alleges that he in fact did not know or understand the information which should have been provided at the plea hearing, the burden will then shift to the state to show by clear and convincing evidence that the defendant's plea was knowingly, voluntarily, and intelligently entered, despite the inadequacy of the record at the time of the plea's acceptance." Bangert, 131 Wis. 2d at 274. Subsequent cases have made clear that if the defendant's motion "establishes a prima facie violation of Wis. Stat. § 971.08 or other court-mandated duties and makes the requisite allegations, the court must hold a postconviction evidentiary hearing . . . ." Brown, 293 Wis. 2d 594, ¶40 (emphasis added).

¶56 In State v. Hampton, 2004 WI 107, ¶72, 274 Wis. 2d 379, 683 N.W.2d 14, the court explained the defendant's right to an evidentiary hearing when the circuit court errs at the plea hearing and the defendant alleges that he or she did not understand the information that should have been provided:

> The State has offered several arguments as to why the defendant in fact understood that the court was not bound by the plea agreement. This case, however, is not really about Corey Hampton's understanding at the time of his plea. It is about the circumstances under which a defendant is entitled to an evidentiary hearing when the court errs at a plea hearing. We hold that Hampton is entitled to an evidentiary hearing on his motion. At the hearing the State will have the opportunity to prove that Hampton was aware

9

in fact that the court was not bound by the terms of the plea agreement.

Hampton, 274 Wis. 2d 379, ¶72.

¶57 The court reiterated this point in State v. Howell, 2007 WI 75, ¶70, 301 Wis. 2d 350, 734 N.W.2d 48:

> In a Bangert motion, a circuit court and a reviewing court examine only whether "a defendant is entitled to an evidentiary hearing when the court errs at a plea hearing." The State cannot circumvent a defendant's right to an evidentiary hearing under Bangert by arguing that based on the record as a whole the defendant, despite the defective plea colloquy, entered a constitutionally sound plea.

Howell, 301 Wis. 2d 350, ¶70 (footnote omitted).[7]

¶58 Are Brown, Howell, and Hampton now overruled? The majority flatly refuses to follow these cases. How are the bench and bar to reconcile Brown, Howell, and Hampton with ¶¶28-30 of the majority opinion?

¶59 The majority's reasoning that Hendricks is not entitled to an evidentiary hearing to determine whether he understood the meaning of "sexual contact" because it is obvious that he understood the meaning of "sexual contact" makes a mockery of these prior cases and due process. The majority's

---

[7] The Howell court has characterized the requirements of a Bangert motion as "relatively relaxed," explaining that the court "require[s] less from the allegations in a Bangert motion because the circuit court bears the responsibility of preventing failures in the plea colloquy." State v. Howell, 2007 WI 75, ¶28, 301 Wis. 2d 350, 734 N.W.2d 48.

For this court's review of a defendant's motion to withdraw a guilty plea after sentencing, see State v. Reyes Fuerte, 2017 WI 104, 378 Wis. 2d 504, 904 N.W.2d 773; State v. Negrete, 2012 WI 92, ¶¶16, 17, 19, 343 Wis. 2d 1, 819 N.W.2d 749.

reasoning is akin to "[d]ispensing with confrontation because testimony is obviously reliable" or "dispensing with jury trial because a defendant is obviously guilty." Crawford v. Washington, 541 U.S. 36, 63 (2004).

V

¶60 A major failing of the majority's reasoning and conclusion is that the majority rests on jury unanimity cases that are not applicable in the context of determining the adequacy of a plea colloquy.[8] Relying on jury unanimity law for guidance in the instant case results in the absurd proposition that a defendant can knowingly and intelligently plead guilty to a crime that involves an intended underlying act without knowing the meaning of the intended underlying act.

¶61 The majority's ruling is inconsistent with due process. I would hold that in order to satisfy due process, a circuit court may not accept a guilty plea from a defendant charged with a crime that requires proof of an intended underlying act unless the circuit court verifies that the defendant understands the intended underlying act. The circuit court must verify that the defendant understands the specific mode(s) of commission of the crime to which he or she is pleading guilty.

---

[8] Indeed, the court of appeals has correctly challenged the reasoning in its earlier Steele decision for improperly relying on jury unanimity law for purposes of evaluating the adequacy of a plea colloquy. State v. Hendricks, No. 2015AP2429-CR, unpublished slip op., ¶¶28-30 (Wis. Ct. App. Dec. 15, 2016).

11

¶62 Accordingly, I would overrule State v. Steele, 2001 WI App 34, 241 Wis. 2d 269, 625 N.W.2d 595, as the court of appeals suggests, State v. Hendricks, No. 2015AP2429-CR, unpublished slip op., ¶¶28-30 (Wis. Ct. App. Dec. 15, 2016), and remand the instant case to the circuit court with instructions to hold an evidentiary hearing at which the State bears the burden of proving that Hendricks' plea was knowing, intelligent, and voluntary despite the deficiency in the plea colloquy.

¶63 For the foregoing reasons, I dissent.

¶64 I am authorized to state that Justice ANN WALSH BRADLEY joins this dissenting opinion.